IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KEVIN MCADAMS,

    Plaintiff

VS.

TROOPER ROGER IVEY,

    Defendant.

No. _____

JURY TRIAL DEMANDED

## COMPLAINT

**Introduction**

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law of the State of Tennessee, against Trooper Roger Ivey ("Ivey") in his individual capacity as employee of the Tennessee Highway Patrol; Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law.

2. It is alleged that the Defendant made an unreasonable seizure of the person of Kevin McAdams (hereinafter "Plaintiff") violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution. It is also alleged that the defendant assaulted and battered in violation of Tennessee law.

1

**Parties**

3. Kevin McAdams was at all material times a resident of Chester County, Tennessee, and of full age.

4. Defendant Roger Ivey was at all times relevant to this Complaint a duly appointed and acting officer of the Tennessee Highway Patrol, acting under color of law, *to wit*, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Tennessee. He is sued in his individual capacity.

FACTS

5. Plaintiff re-alleges paragraphs 1 through 4.

6. On or about June 22, 2019, Plaintiff was traveling in a Polaris side-by-side on Bullman Road in McNairy County, Tennessee, when he was met on the road by the Defendant.

7. The Defendant turned around at approximately 3:20 p.m., and reached speeds of up to seventy-two (72) miles per hour to effect a traffic stop on Plaintiff.

8. Plaintiff immediately pulled over in response to the Defendant's pursuit and activation of his sirens and blue lights.

9. At the time of the stop, Plaintiff was wearing no shirt and a pair of shorts.

10. A passenger, Phillip Miner, was also riding in the vehicle.

11. The stated cause for the stop was that the Plaintiff was not wearing a seatbelt.

12. Plaintiff was compliant with the Defendant when stopped and followed all verbal instructions.

13. The Defendant asked Plaintiff if he had consumed alcoholic beverages or any "medication."

14. Plaintiff responded that he had four (4) or five (5) beers since 11:00 a.m., and

2

recounted medication he took by prescription, including medication for hypertension and diabetes.

15. The Defendant obtained the Plaintiff's driver's license number and confirmed its validity.

16. The Defendant searched the Plaintiff for weapons and contraband, and found none.

17. The Defendant then requested that Plaintiff complete field sobriety tests (FST), and he complied.

18. During the FST, the Plaintiff told the Defendant he had recently broken his leg and had only recently stopped wearing a brace.

19. At the conclusion of twelve (12) minutes of FST, the Defendant stated that Plaintiff had failed the tests and would be placed under arrest for Driving Under the Influence (DUI), First Offense.

20. During the entirety of the stop, the Plaintiff was compliant; did not present a physical threat to the Defendant or others; and did not attempt to resist or evade arrest.

21. It was obvious to the Defendant that the Plaintiff was of large stature, as the Defendant noted the Plaintiff "was a bigger fellow."

22. At approximately 3:51 p.m., the Defendant linked two (2) sets of handcuffs together; handcuffed the Plaintiff behind his back; and placed the Plaintiff in the back of his squad car, which Defendant admitted had little room.

23. Shortly after being placed in the car, the Plaintiff noted that he had difficulty with pain in his leg and that the cuffs were "killing him."

24. At approximately 3:52 p.m., the Plaintiff complained that the handcuffs were hurting and "digging into [him]."

25. At approximately 3:54 p.m., the Plaintiff complained again of pain resulting from the handcuffs.

26. At approximately 4:01 p.m., the Plaintiff again complained the handcuffs were cutting his wrists.

27. At approximately 4:03 p.m., the Defendant pulled away from the scene of the stop and transported the Plaintiff's passenger to the Plaintiff's home approximately six (6) minutes later.

28. At approximately 4:16 p.m., the Defendant returned to the scene of the stop to wait for a third party to pick up the Plaintiff's vehicle. At that time, the Defendant turned off his personal audio recording equipment.

29. From 4:16 p.m. to approximately 4:45 p.m., the Defendant waited at the scene of the stop for the vehicle to be picked up, all while the Plaintiff remained handcuffed and seated in the back seat of the squad car.

30. At approximately 4:28 p.m., the Plaintiff again complained that he could not feel his fingers, and requested to step out of the vehicle to relieve pain and pressure.

31. The Defendant refused due to the "way [the plaintiff] was acting" and did not investigate the Plaintiff's complaints.

32. At approximately 4:37 p.m., the Plaintiff again complained that he could not feel his fingers and had pain in his leg and requested to step out of the vehicle to relieve pain and pressure; the Defendant again refused.

33. At approximately 4:45 p.m., a third party arrived to pick up the vehicle.

34. At approximately 4:52 p.m., the Defendant started to leave the scene but first placed a radio call to determine in what county the stop occurred; dispatch responded that global

positioning system (GPS) tracking placed the stop in McNairy County.

35. Despite this information, the Defendant unilaterally determined that he was "pinging" in Chester County and proceeded toward the Chester County Jail.

36. At approximately 4:57 p.m., the Defendant left the scene.

37. At approximately 5:12 p.m., the Plaintiff stated again that he could not feel his hands; the Defendant stated that they were "six minutes away" from the Chester County Jail.

38. At approximately 5:15 p.m., the Defendant indicated that he "had a change of plans" and "didn't want to send [the Plaintiff] to the wrong county," and therefore pulled over to determine in what county the stop occurred.

39. At that time, the Defendant confirmed what he had been told by dispatch at approximately 4:52 p.m., *to wit*, that the stop occurred in McNairy County.

40. At approximately 5:31 p.m., the Defendant arrived at the McNairy County Jail.

41. At no time during the one (1) hour and forty-one (41) minutes the Plaintiff was handcuffed and seated in the back seat of the car did the Defendant investigate the Plaintiff's complaints or attempt to alleviate them.

42. At no time during the Defendant's encounter with the Plaintiff was Plaintiff ever physically or verbally threatening or noncompliant; additionally, he was known to be unarmed and did not attempt to evade the Defendant.

43. The force used by Defendant against Plaintiff was excessive, unjustified, and objectively unreasonable under the circumstances.

44. At all material times, and alternatively, the actions and omissions of Defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, and/or deliberately indifferent to Plaintiff's rights.

45. As a direct and proximate result of the Defendant's act and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others:

    a. Physical injuries, including nerve damage;

    b. Pain and suffering, including emotional distress and embarrassment;

    c. Medical expenses;

    d. Violation of his constitutional rights;

    e. Harm to reputation;

    f. All damages and penalties recoverable under 42 U.S.C. § 1983 and 1988 and as otherwise allowed under Tennessee and United States Statutes, codes, and common law.

## COUNT ONE
## 42 USC §1983

46. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

47. By the actions and omissions described above, the Defendant violated 42 USC §1983, depriving Plaintiff of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to U.S. Constitution:

    a.     The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments.

    b.     The right to be free from excessive and unreasonable force in the course of arrest or detention as secured by the Fourth and Fourteenth Amendments.

48. As a direct and proximate result of Defendant's acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth above.

49. The Defendant subjected Plaintiff to his wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for

whether the rights and safety of Plaintiff would be violated by his acts and/or omissions.

50. The conduct of the Defendant entitles Plaintiff to punitive damages and penalties allowable under 42 USC §1983 and Tennessee law.

51. Plaintiff is also entitled to reasonable costs and attorney fees under 42 USC §1988.

## COUNT TWO
## ASSAULT AND BATTERY

52. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

53. The actions and omissions of the Defendant as set forth above constitute assault and battery.

54. As a direct and proximate result of Defendant's assault and battery of Plaintiff, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above.

WHEREFORE, the Plaintiff requests that this Court:

a. For a jury to try the cause;

b. Award compensatory damages to the Plaintiff against the Defendant;

c. Award punitive damages against the individual Defendant;

d. Award reasonable attorney's fees and costs where applicable;

e. Award such other and further relief as this Court may deem appropriate.

Respectfully submitted,

s/ Leanne A. Thorne
Leanne A. Thorne, BPR #023481
P. O. Box 262
Lexington, TN 38351
(731) 968-9810
thornelaw@hotmail.com

**STATE OF TENNESSEE**
**COUNTY OF HENDERSON**

The Plaintiff in the foregoing Complaint personally appeared before me, the undersigned authority, and on his oath stated that the facts and matters set forth in his foregoing Complaint are true, to the best of his knowledge, information and belief.

_____
Kevin McAdams, Plaintiff

Sworn to and subscribed before me, this the 11th day of July, 2020.

_____
Notary Public

My commission expires: 4-17-21

9